IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Xavier Walker, ) | |
|       Plaintiff, ) | |
| ) | No. 20 C 7209 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| City of Chicago, et al., ) | |
|       Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the City Defendants' [32] motion to dismiss is granted as to Count VI and denied as to the remainder. The County Defendants' motion to dismiss [31] is granted. Plaintiff is granted leave to replead as to the County Defendants within 14 days of the date of entry of this order.

### STATEMENT

**Background**

Plaintiff alleges that when he was 19 years old, Chicago police officers (with the City of Chicago, the "City Defendants") beat him and fabricated evidence to obtain a false confession for murder. Plaintiff also alleges involvement by a Cook County Sheriff's officer and an assistant state's attorney (the "Cook County Defendants"). After a bench trial, Plaintiff was convicted of first-degree murder and, on June 22, 2004, was sentenced to 35 years in prison. Plaintiff filed a supplementary petition for postconviction relief in 2015, asserting actual innocence. At the same time, he sought review from the Cook County State's Attorney's Conviction Integrity Unit and filed a complaint with the Torture Inquiry and Relief Commission. His conviction was vacated[1] on July 27, 2018, and he was granted a new trial. On December 11, 2019, the Cook County State's Attorney's Office dismissed the charges against Plaintiff.

Plaintiff filed the instant lawsuit on December 6, 2020, alleging the following claims: Counts I and II—Fifth and Fourteenth Amendment due process violations for false confession; Count III—Fourteenth Amendment due process violation for fabrication of evidence; Count IV—Fourteenth Amendment due process violations for failure to comply with requirements under *Brady v. Maryland*; Count V—Fourth Amendment violation for unlawful pretrial detention; Count VI—Fourth Amendment violation for excessive force; Count VII—failure to

---

[1] The Court has been provided no details on the order vacating his conviction. The complaint alleges only that "[o]n 17 July 2018, Mr. Walker's conviction was vacated and he was granted a new trial." (Compl., Dkt. # 1, ¶ 97.) The complaint further states that "[w]hile awaiting his new trial, Mr. Walker was denied bond." (*Id*. ¶ 99.)

intervene; Count VIII—Conspiracy; Count IX—malicious prosecution; Count X—intentional infliction of emotional distress; Count XI—indemnification.

The City Defendants and the County Defendants have each filed a motion to dismiss. The Court addresses them in turn.

**Standard**

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and contain enough factual matter, accepted as true, to state a plausible claim for relief, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Analysis**

    I.    The City Defendants

        A.    <u>Count VI--Excessive force</u>[2]

"Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) . . . is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017). In Illinois, the statute of limitations for § 1983 claims is two years. Excessive force claims accrue upon application of the force. *Wallace v. Kato*, 549 U.S. 384, 392-93 (2007). According to the City Defendants, Plaintiff alleges that he was beaten and tortured in May 2000; thus, they assert, the statute of limitations expired over 19 years ago. Plaintiff contends that his excessive force claim did not accrue until his charges were dismissed on December 11, 2019 under *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the Supreme Court held that "a plaintiff may not pursue civil claims that would necessarily imply the invalidity of his criminal conviction unless he proves that his 'conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Quintero v. Vega*, No. 19-CV-0759-BHL, 2021 WL 2355310, at *3 (E.D. Wis. June 9, 2021) (citation omitted).

Case law indicates that "claims based on out-of-court events, such as gathering of evidence, accrue as soon as the constitutional violation occurs." *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). As another court in this district explained, "consider that a coerced confession used to incriminate a suspect can form the basis of both a Fourth Amendment coerced-confession claim and a Fifth Amendment self-incrimination claim." *Saunders v. City of Chi.*, 146 F. Supp. 3d 957, 965 (N.D. Ill. 2015). "The Fourth Amendment claim accrues

---

[2] The Court addresses the argument in the order set forth by the City Defendants.

regardless of whether any subsequent criminal proceeding is initiated, and thus, under *Wallace*, cannot benefit from *Heck* tolling." *Id.*; *see also Wrice v. Byrne*, 488 F. Supp. 3d 646, 675-76 (N.D. Ill. 2020) ("A person abused by police during an interrogation has a Fourth Amendment claim for coercive interrogation, regardless whether any evidence obtained from the interrogation is later used at trial. But because that claim does not depend on a defendant's guilt or innocence, it accrues immediately after the interrogation, not when (or if) the defendant's conviction is ultimately reversed or vacated."). Here, the excessive force claim accrued at the time the force was purportedly applied; thus, it is barred by the statute of limitations.[3]

B. Counts I, II, and III—Due process violations for false confession and fabrication of evidence

The City Defendants also contend that Plaintiff's due process claims are time-barred for the same reason described above, that is, the case was filed more than two years after Plaintiff's conviction was vacated. Defendants point to *Johnson v. Winstead*, 900 F.3d 428 (7th Cir. 2018), in which the Seventh Circuit stated that "*Wallace* thus clarified that *Heck* delays the accrual of a § 1983 claim 'until the setting aside *of an extant conviction* which success in that tort action would impugn.'" *Id.* at 437 (emphasis in *Johnson*). According to the City Defendants, "[u]nder *Johnson*, the fact that the conviction was vacated is what governs for purposes of accrual" and "[t]he potential for additional prosecution is beside the point." (Defs.' Reply, Dkt. # 39, at 7.)

Plaintiff, however, contends that the *Heck* bar was not lifted until the State's Attorney's Office dropped the charges in 2019, thus making the claims timely. *See Savory v. Cannon*, 947 F.3d 409, 417 (7th Cir. 2020) ("*Only once the criminal proceeding has ended in the defendant's favor*, or a resulting conviction has been invalidated within the meaning of *Heck* . . . will the statute of limitations begin to run.") (emphasis added). Plaintiff emphasizes language from a more recent Supreme Court case, *McDonough v. Smith*, — U.S. —, 139 S. Ct. 2149 (2019), in which the Court stated that "[t]here is not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings *while those criminal proceedings are ongoing*." *Id.* at 2158 (emphasis added and internal citations and quotation marks omitted). Plaintiff points out that the purpose of *Heck* is to avoid "'parallel litigation on the issue of guilt [and] preclude the possibility of conflicting resolutions arising out of the same transaction, . . . . and respect concerns for comity . . . and consistency.'" *Savory*, 947 F.3d at 428.

The City Defendants respond that "the proper course for addressing this potential inconsistent outcome is not extending the accrual date to await the outcome of an anticipated future conviction" but for the plaintiff to file a claim after the conviction is vacated and seek a stay from the district court until it is determined whether the plaintiff will be tried again. (City Defs.' Reply, Dkt. # 39, at 8.) This is the route relied upon in *Wallace*, in which the Supreme Court expressly rejected the plaintiff's assertion that "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Wallace*, 549 U.S. at 393 (emphasis in original). But *McDonough* rejected that approach for the fabricated-evidence claim before it, stating:

---

[3] The Court disagrees with Plaintiff's contention that he could not have alleged excessive force without necessarily implying the invalidity of his conviction.

3

> [Defendant] suggests that stays and ad hoc abstention are sufficient to avoid the problems of two-track litigation. Such workarounds are indeed available when claims falling outside *Heck*'s scope nevertheless are initiated while a state criminal proceeding is pending, see *Wallace*, 549 U.S. at 393–394, 127 S. Ct. 1091 (noting the power of district courts to stay civil actions while criminal prosecutions proceed); *Heck*, 512 U.S. at 487–488, n. 8, 114 S. Ct. 2364 (noting possibility of abstention), but [Defendant's] solution is poorly suited to the type of claim at issue here. When, as here, a plaintiff's claim "necessarily" questions the validity of a state proceeding, *id.,* at 487, 114 S. Ct. 2364, there is no reason to put the onus to safeguard comity on district courts exercising case-by-case discretion—particularly at the foreseeable expense of potentially prejudicing litigants and cluttering dockets with dormant, unripe cases.

*McDonough,* 139 S. Ct. at 2158. Because Plaintiff's due process claims necessarily question the validity of any ongoing criminal proceedings, the accrual date is when the charges were dismissed on December 11, 2019.

Therefore, the Court denies the City Defendants' motion to dismiss as time-barred Counts I, II, and III.

### C. Counts VII and VIII--Failure to intervene and conspiracy

The City Defendants next argue that the failure-to-intervene and conspiracy claims must be dismissed because they are derivative claims and necessarily require a finding that the Defendant Officers violated Plaintiff's constitutional rights. Because no determination has yet been made as to whether the Defendant Officers violated Plaintiff's constitutional rights, this basis for relief is denied.

The City Defendants further assert that the conspiracy count is barred as to the Defendant Officers based on the intracorporate conspiracy doctrine, which "establishes (in certain legal contexts) that 'an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy.'" *Liggins v. City of Chi.*, No. 20 C 4085, 2021 WL 2894167, at *5 (N.D. Ill. July 9, 2021) (citation omitted). "The underlying rationale is that employees who work for a *single* entity cannot be said to conspire with one another, because (like tangoing) it takes two (or more) to conspire." *Haliw v. City of S. Elgin*, No. 19 C 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020) (emphasis in original). The Seventh Circuit has not yet expressly spoken as to whether the intracorporate conspiracy doctrine applies in § 1983 cases. The *Haliw* court observed that there is some doubt as to whether the doctrine should apply given that "the acts of a municipality's employees are *not* attributable to the governmental employer in § 1983 cases." *Id*. (emphasis in original). Noting that the Seventh Circuit has extended the intracorporate conspiracy doctrine to claims under 42 U.S.C. § 1985, and that other district courts have applied it in § 1983 cases, the *Haliw* court concluded that the law is not clearly established on this point. *Id*. The court found, therefore, that the officers were protected by qualified immunity. *Id*. ("Liability is not clearly established for conspiracies

4

amongst police officers of a single municipality because the law is unsettled on whether the intracorporate conspiracy doctrine applies to § 1983 claims.").

Another court in this district recently disagreed with *Haliw*, stating that:

> The *Haliw* court held that what must be "clearly established" for purposes of qualified immunity is the availability of a defense to conspiracy liability: the intracorporate conspiracy doctrine. The Court believes what must be clearly established is limited to the *underlying constitutional right* that the Defendants conspired to violate.

*Liggins*, 2021 WL 2894167, at *6 (emphasis in original). *See also Harris v. City of Chi.*, No. 20 C 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020) ("Recent uncertainty over the intracorporate conspiracy doctrine's application to § 1983 cases do[es] not create an opening for qualified immunity on behalf the defendant officers."). This Court agrees with *Liggins* and *Harris* that doubts about the applicability of the intracorporate conspiracy doctrine in § 1983 cases do not support a finding of qualified immunity. Thus, this basis for relief is denied.

D. Counts IX and X—State-law claims for malicious prosecution and intentional infliction of emotional distress

The City Defendants argue that the state-law claims for malicious prosecution and intentional infliction of emotional distress ("IIED") are time barred. The IIED claim is subject to a one-year statute of limitations. *Davenport v. Dovgin*, 545 F. App'x 535, 538 (7th Cir. 2013) (holding that Illinois' one-year limitations period for claims against a local government and its employees, 745 ILCS 10/8–101, governed an arrestee's IIED claim against a police officer). Further, the City Defendants assert that the claim accrued at the time of the arrest, and thus is time-barred. *See Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) ("[A] claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest.").

Here, however, Plaintiff alleges that his confession and subsequent conviction were the result of beatings, threats, and torture, which resulted in his wrongful imprisonment and constituted the intentional infliction of emotional distress. *Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876, 888 (N.D. Ill. 2016) (rejecting argument that IIED claim was time-barred under *Bridewell* and stating that the plaintiff "alleges that the combined conditions of his interrogation eventuated in the coerced confession that resulted in his wrongful conviction, all of which combined to constitute the intentional infliction of emotional distress claim in that regard"). Moreover, "Illinois courts embrace[] the *Heck* rule for claims arising under Illinois law." *Patrick v. Fuelling*, No. 14 C 5414, 2021 WL 843426, at *7 (N.D. Ill. Mar. 5, 2021). Because Plaintiff alleges that his emotional injury resulted from not just his conviction and prosecution, but the entirety of his imprisonment, and a finding in his favor on the IIED claim, as alleged, necessarily implies the invalidity of his conviction, the IIED claim was tolled under *Heck*.

With respect to when the one-year statute of limitations began to run, whether it was when his conviction was vacated or when the charges were ultimately dismissed on December

5

11, 2009, the Court adopts its analysis from section B, in which it concluded that the appropriate accrual date was the date of dismissal of the charges. Because Plaintiff filed his complaint on December 6, 2020, which was within one year of the dismissal of his charges, at this stage of the litigation, the Court finds no basis for dismissal of the IIED claim as untimely.

With respect to the malicious-prosecution claim, it accrued when the charges were dismissed. *See Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) ("Under both state and federal law a malicious prosecution claim does not accrue until the criminal proceeding that gave rise to it ends in the claimant's favor. . . . That didn't happen until the charges against [the plaintiff] were dismissed" even though the conviction had been reversed and the reversal affirmed much earlier). The City Defendants do not address *Julian*, so any argument challenging its application is waived. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010). Thus, the Court concludes that the claim is timely.

   E. *Monell*

Although Plaintiff does not have a separate *Monell* count, he includes allegations throughout his complaint regarding the City's policy and practice of coercing false confessions. (Compl., Dkt. # 1, ¶¶ 101-118.) The City's Defendants' contention that any *Monell* claim should be dismissed because the alleged underlying constitutional violations lack merit is rejected given that Plaintiff's constitutional claims survive the City Defendants' motion to dismiss. Finally, because federal claims remain, the Court denies the City Defendants' request not to exercise supplemental jurisdiction over the state-law claims against them.

  II. The County Defendants

   A. Assistant State's Attorney ("ASA") Mahoney

The County Defendants contend that ASA Mahoney is immune from suit based on absolute prosecutorial immunity and that Plaintiff has failed to sufficiently plead a claim against Mahoney. "[A] showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity." *See Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012). As to Mahoney, Plaintiff alleges only that:

> 6. Defendant Mahoney was acting as an investigator when he conspired with Defendant Officers to coerce and fabricate false witness testimony and evidence.
>
> . . .
>
> 30. Defendant Mahoney conspired with Defendant Officers and aided their framing of Mr. Walker by locking [Maurice] Wright[4] into a statement inculpating him.

---

[4] From what the Court can ascertain, there is a defendant named David Wright and a witness named Maurice Wright.

> 31. Defendant Mahoney, an assistant state's attorney, knew that Wright's statement was false, as evidenced by the fact that Mahoney fabricated several details in [Wright's] eventual statement.

(Compl., Dkt. # 1, ¶¶ 6, 30, 31.)

Plaintiff contends that his allegations are sufficient because he "alleges that Defendant Mahoney coerced false witness testimony during the investigative stage." (Pl.'s Resp., Dkt. # 35, at 4.) But Plaintiff makes no effort to plead even basic facts that take the claim to the level of plausibility, including, but not limited to, how or when Mahoney took a statement from Wright, and which part of Wright's statement was purportedly fabricated or coerced. While Plaintiff need not plead detailed facts in support of his claim, he must "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Plaintiff has not done so; there simply is no story as to Mahoney. Nor is Plaintiff's conclusory allegation that Mahoney was "acting as an investigator" enough to withstand the County Defendants' assertion that Mahoney enjoys absolute immunity as a prosecutor, particularly in light of the almost complete absence of facts regarding Mahoney's alleged role in the fabrication and coercion of a witness statement that led to Plaintiff's wrongful conviction.

The County Defendants also contend that the allegations as to Defendant Brzeniak, a Cook County Sheriff's officer, are insufficient to state a plausible claim for relief. The allegations mentioning Brzeniak are as follows:

> 22. At approximately 11 a.m. on 27 May 2000, Defendants Pietryla, Riordan, and Brzeniak, along with other Defendant Officers, forced their way into Wright's home.
>
> . . .
>
> 25. . . . Defendant Officers handcuffed Wright and brought him to Area 4 Detective Headquarters where he was held for over three days in a small windowless room with no toilet, sink, or running water.
>
> . . .
>
> 40. On 28 May 2000, Xavier was falsely arrested by Defendants Brzeniak, Sanders, Wright, and Pietryla.
>
> 41. Defendant Officers claimed they saw Mr. Walker as he was walking down his front porch; in fact, his home does not even have a front porch.
>
> 42. Rather, without identifying themselves, Defendant Officers chased and then kicked Mr. Walker in the stomach, causing him to double over before he was thrown to the ground and handcuffed.
>
> . . .

7

> 44. Mr. Walker was taken to Area 4 Headquarters in Chicago, Illinois where he was questioned by Defendant Officers.

(Compl., Dkt. # 1, ¶¶ 22, 25, 40-42, 44.) No other allegations mention Brzeniak.

Plaintiff's only response to the County Defendants' challenge to the adequacy of the allegations against Brzeniak is that because group pleading is appropriate, Brzeniak has been adequately apprised of the claims against him. But, as noted above, Plaintiff's claims include due process violations for false confession, fabrication of evidence, and failure to comply with requirements under *Brady v. Maryland*; a Fourth Amendment violation for unlawful pretrial detention; a Fourth Amendment violation for excessive force; failure to intervene; conspiracy; malicious prosecution; and intentional infliction of emotional distress. In which of these claims is Brzeniak implicated? Where did Brzeniak's purported conduct end and that of others' begin? Did he allegedly fabricate evidence or fail to comply with *Brady*? It is simply impossible to tell from the allegations set forth in the complaint. Contrary to Plaintiff's assertion, Brzeniak has not been put on fair notice of the claims against him.

The motion to dismiss ASA Mahoney and Officer Brzeniak is granted without prejudice to repleading.

**Conclusion**

For the reasons stated above, the City Defendants' motion to dismiss is granted as to Count VI and denied as to the remainder, and the County Defendants' motion is granted without prejudice. Plaintiff is granted leave to replead as to the County Defendants within 14 days of the date of entry of this order.

**Date:** September 8, 2021

_____
**Ronald A. Guzmán**
**United States District Judge**