# EXHIBIT 40

```
 1    ready to go.
 2               THE COURT:  Okay.
 3                    (Brief pause.)
 4               MS. COLEMAN:  I don't believe the detective
 5    has been sworn.
 6               THE COURT:  Would you stand and raise your
 7    right hand.
 8                    (Witness sworn.)
 9               THE COURT:  Please be seated.
10    WHEREUPON,
11                    JOHN RIORDAN,
12    called as a witness on behalf of the People of
13    the State of Illinois, having been first duly sworn,
14    under oath was examined and testified as follows:
15                    DIRECT EXAMINATION
16                    BY MS. COLEMAN:
17         Q.   Detective, could you please tell the judge
18    your name, star number, and unit of assignment?
19         A.   Gang specialist John Riordan,
20    R-i-o-r-d-a-n, Star Number 60040.  I'm assigned to
21    Area 4 Violent Crimes.
22         Q.   Now, on August 5th of the year -- August
23    4th and 5th of the year 2000, were you assigned to
24    Area 4?
```

1       A.      Yes.

2       Q.      And on those days, were you working on the
3    murder of Marek Majdak which had occurred on May 13th
4    of 2000 at 4721 West Ohio?

5       A.      Yes.

6       Q.      Were you working with a partner on those
7    days?

8       A.      Yes, I was.

9       Q.      Who was that?

10      A.      Detective Michael Pietryla.

11      Q.      Detective, at any point during your -- do
12   you see the person that was in custody on those days
13   in the courtroom today? You can get up if you have
14   to.

15      A.      Yes, the gentleman in the brown top and
16   brown bottom (indicating.)

17              MS. COLEMAN: Judge, may the record reflect
18   the in-court identification of the defendant?

19              THE COURT: It shall.

20   BY MS. COLEMAN:

21      Q.      Detective, when you met with the defendant
22   on August 4th and 5th of 2000, at any time did you
23   threaten the defendant in any way that if he refused
24   to talk he would be held for an indefinite period of

1  time?

2  A. No.

3  Q. Was there ever a time when the defendant
4  said to you that he had nothing to say about this
5  investigation?

6  A. No.

7  Q. Was there ever a time before August 4th
8  that you, yourself, ever saw or spoke to the
9  defendant on the phone or in person at all?

10 A. No.

11 Q. Was there ever a time when you showed the
12 defendant various statements of all the witnesses in
13 the case and then coached the defendant to make a
14 statement?

15 A. No.

16 Q. Now I'm going to direct you specifically to
17 August 5th of the year 2000. Did you call a -- did
18 you and your partner call a State's Attorney to go to
19 that station that morning?

20 A. Yes.

21 Q. And did an ASA by the name of Jim Navarre
22 arrive at the area?

23 A. Yes.

24 Q. At approximately 4:30 that afternoon was a

CCSAO XAVIER WALKER 001032

1  videotaped statement taken from the defendant
2  regarding the murder of Marek Majdak?
3      A.   Yes.
4      Q.   Were you present for that videotaped
5  statement?
6      A.   Yes, I was.
7              (WHEREUPON, People's Exhibit
8              Number 2 was marked for
9              identification.)
10 BY MS. COLEMAN:
11     Q.   Now, before you testified, did you view
12 what has been marked as People's Exhibit Number 2,
13 the videotaped statement of Jovanie Long?
14     A.   Yes.
15     Q.   And did you have a chance to both view it
16 and listen to it?
17     A.   Yes.
18     Q.   And does that People's Exhibit Number 2,
19 does it truly and accurately show the statement that
20 the defendant gave to ASA Navarre on August 5th of
21 the year 2000?
22     A.   Yes, it does.
23     Q.   Does it show what everyone looked like?
24     A.   Yes.

EE-54

CCSAO XAVIER WALKER 001033

1    Q.   Does it also show what everyone was saying
2    in the video?
3    A.   Yes.
4         MS. COLEMAN:  Judge, at this time, I'm
5    going to ask leave to publish the end of the
6    videotaped statement.
7         MR. CONNIFF:  Judge, I'd object.  Can I
8    voir dire for one second on the foundation?
9         THE COURT:  Go right ahead.
10             VOIR DIRE EXAMINATION
11             BY MR. CONNIFF:
12   Q.   Is it Detective Riordan?
13   A.   Gang Specialist, sir.
14   Q.   You have seen this videotaped statement?
15   A.   Yes.
16   Q.   And this videotape only covers the actual
17   statement that the defendant made at the end of his
18   custody, what was recorded on that tape at the end of
19   his custody; correct?
20   A.   Correct.
21   Q.   It's not a videotape that commences at the
22   beginning of his custody and continues through to the
23   end of his custody, is it?
24   A.   No.

```
 1          Q.    It is only the portion that you and the
 2   State's Attorney decided to videotape; correct?
 3              MS. COLEMAN:  Objection to the form of that
 4   question.
 5              THE COURT:  Sustained.
 6              MR. CONNIFF:  Judge, I have nothing
 7   further.  I'd object to publishing a portion of a
 8   videotape which the entirety of the videotape is a
 9   portion -- only a portion of the defendant's entire
10   custody, and if -- as part of the foundation, we
11   would ask that the Court rule that the -- in order to
12   introduce any portion of a videotape, obviously, this
13   defendant is in custody for a period of time and the
14   vast majority of that period of time is not on
15   videotape.
16              The only thing on videotape is what
17   the state selects to put on videotape, and,
18   therefore, because there is not a videotape which
19   covers the entire period of the custody, this is only
20   a self-serving portion, and, therefore, the
21   foundation should be that there is a videotape which
22   commences at the time that the defendant is brought
23   into the room which encompasses all the transactions,
24   conversations, suggestions, question and answers,
```

CCSAO XAVIER WALKER 001035

1   that are posed to the defendant and answers given by
2   the defendant and not simply a portion of that
3   custody at the end, which is a prearranged portion by
4   the Chicago Police Station and the State's Attorney's
5   Office.
6              So we would object to publishing only
7   a portion which is captured on videotape which does
8   not represent that -- there's no other videotape
9   available to impeach anything which is on this
10  portion which is selected by the State's Attorneys.
11             THE COURT: Miss Coleman?
12             MS. COLEMAN: Judge, the proper foundation
13  has been laid to show the portion of the defendant's
14  interrogation which was videotaped.
15             The fact that the entire
16  interrogation was not videotaped does not take away
17  from the fact that the proper foundation was laid.
18  It may go to the weight, but it doesn't go to the
19  foundation as to whether this portion of the
20  videotape could be admitted.
21             THE COURT: You have the last word.
22             MR. CONNIFF: Judge, the defendant
23  obviously has no ability to request that any other
24  portion of his custody be videotaped. This is all

1   within the control of the Chicago Police Department,
2   and obviously, again, they're only videotaping a
3   small portion of the proceedings, obviously, to
4   create evidence to present in court.  It's
5   self-serving.
6               They're calling it authentication.  I
7   don't think this is truly authentication, and I would
8   ask that it be excluded unless all of the custody is
9   videotaped so that the defendant could be treated
10  fairly and possibly selecting other portions of an
11  available videotape which might cast doubt on the
12  portion that the state now wants to show you.
13              And we obviously don't have that
14  available because the defendant doesn't have
15  videotape equipment.  He doesn't have the ability to
16  do that.
17              And I don't think that it's fair to
18  create a videotape with the defendant on it which
19  covers only a portion of his custody when he's
20  obviously in an adverse position and he has no
21  ability to present any evidence himself, bring it
22  into a courtroom, and then show it to your Honor and
23  then argue that it proves something.
24              I just don't think that we -- we have

1  no ability to impeach that is what I'm saying.
2          THE COURT: So you're saying unless the
3  entire transaction or interaction between the police
4  and a suspect is videoed, then there should not be
5  any portions of a video permitted in a possible
6  proceeding against a suspect?
7          MR. CONNIFF: Yes.
8          THE COURT: All right. I don't think that
9  goes to the weakening of the foundation. It is, as
10 Miss Coleman points out, I think, perhaps, the
11 subject of argument as it relates to credibility,
12 weight, et cetera.
13         But I do believe that the foundation
14 has been laid, and it will be admitted.
15         MS. COLEMAN: Judge, so the record is
16 clear, I'm only showing the end of the videotape that
17 relates to the defendant's statements.
18         MR. CONNIFF: Judge, can Mr. Long be
19 allowed to step over by the jury box to view the
20 videotape?
21         MS. COLEMAN: Judge, per the
22 court reporter's request, it is Page 12 beginning at
23 line 6 until the end.
24

CCSAO XAVIER WALKER 001038

```
 1
 2                    (WHEREUPON, the following is the
 3                    transcript of the portion of
 4                    Exhibit 2 which was played for
 5                    the Court:)
 6              "Question:  Okay.  Now, did you
 7  come here to the police station yesterday?
 8              "Answer:  Yes.
 9              "Question:  Okay.  And you came
10  here on your own?
11              "Answer:  Yeah.
12              "Question:  Okay.  Why is that?
13              "Answer:  Cause I had to.  I
14  felt bad about what happened.
15              "Question:  How have the police
16  treated you?
17              "Answer:  They've treated me
18  fair.
19              "Question:  And how have I
20  treated you?
21              "Answer:  Fair.
22              "Question:  Have you been given
23  anything to eat?
24              "Answer:  Yeah.
```

EE-60

CCSAO XAVIER WALKER 001039

```
 1                    "Question:  What have you had to
 2          eat?
 3                    "Answer:  McDonald's and
 4     Burger King.
 5                    "Question:  You had anything to
 6          drink?
 7                    "Answer:  Yeah.
 8                    "Question:  What have you had to
 9          drink?
10                    "Answer:  Some pops, fruit pop
11          and some water.
12                    "Question:  Okay.  Have you had
13          any cigarettes?
14                    "Answer:  Yeah.
15                    "Question:  Okay.  Have you been
16          allowed to use the bathroom?
17                    "Answer:  Yeah.
18                    "Question:  More than once?
19                    "Answer:  Yeah.
20                    "Question:  Okay.  Have you been
21          able to get any sleep?
22                    "Answer:  Yeah.
23                    "Question:  Okay.  Are you
24          giving this statement freely and
```

```
 1            voluntarily?
 2                    "Answer:  Yeah.
 3                    "Question:  Any threats or
 4            promises been made to you in exchange for
 5            this statement?
 6                    "Answer:  No.
 7                    "Question:  Okay.  Are you under
 8            the influence of alcohol or drugs?
 9                    "Answer:  No.
10                    "Question:  This now concludes
11            the statement of Jovonie Long."
12                       (End of tape.)
13                   DIRECT EXAMINATION (Cont.)
14                   BY MS. COLEMAN:
15        Q.    So, Detective, in that videotaped
16   statement, the defendant acknowledges that he
17   arrived at the area the day before that statement;
18   correct?
19        A.    Correct.
20        Q.    And that statement was taken on August 5th;
21   correct?
22        A.    Correct.
23        Q.    And in that videotaped statement, he
24   acknowledges he was not threatened --
```

EE-62

CCSAO XAVIER WALKER 001041

1      MR. CONNIFF: Judge, I'd object to the
2 State's Attorney rephrasing what is on the tape.
3 Your Honor had an opportunity to view the videotape.
4      THE COURT: All right. Your objection is
5 noted.
6           Go on.
7 BY MS. COLEMAN:
8   Q.  On that videotape, the defendant
9 acknowledged to the State's Attorney that he was not
10 threatened in any way by the police; correct?
11   A.  Correct.
12   Q.  In fact, he acknowledged he was not
13 threatened in any way before the statement;
14 correct?
15   A.  Correct.
16      MS. COLEMAN: No further questions, Judge.
17           CROSS EXAMINATION
18           BY MR. CONNIFF:
19   Q.  Detective, were you present when the
20 defendant turned himself in?
21   A.  Yes.
22   Q.  There are sheets kept up in Area 4 Violent
23 Crimes to log in individuals who come up to Area 4
24 Violent Crimes and turn themselves in and are being

CCSAO XAVIER WALKER 001042

1       questioned there; correct?

2               MS. COLEMAN:  Judge, I'm going to object to

3       beyond the scope of this witness.

4               THE COURT:  It is.

5       BY MR. CONNIFF:

6       Q.  Did you make any notation at the time that

7       the defendant turned himself in?

8       A.  Yes.

9       Q.  And where did you make that notation?

10      A.  It was made in GPRs.

11      Q.  I'm sorry?

12      A.  It was made in the General Progress Report.

13      Q.  The General Progress Report?

14              Did you make any notation on any

15      other form which is kept in Area 4?

16              MS. COLEMAN:  Judge, again, objection to

17      beyond the scope.

18              MR. CONNIFF:  Judge, this is what the

19      detective testified to concerning records of -- which

20      are kept in Area 4 Violent Crimes which --

21              THE COURT:  He didn't.  He didn't testify

22      to it nor was he asked about it.

23              MR. CONNIFF:  Right.  Judge, I'd ask to ask

24      him briefly about whether he, himself, made any

```
 1    notations on those forms and whether those forms
 2    existed on that day.
 3              THE COURT: You can call him as your
 4    witness.
 5              MR. CONNIFF: All right. No further
 6    questions.
 7              MS. COLEMAN: I have nothing further,
 8    Judge, from this witness.
 9              THE COURT: Step down, sir.
10                   (Witness excused.)
11              MS. COLEMAN: Judge, I have one other brief
12    witness. It's the polygraph examiner.
13              THE COURT: Okay.
14                   (Brief pause.)
15              THE COURT: Please raise your right hand.
16                   (Witness sworn.)
17              THE COURT: Please be seated.
18    WHEREUPON,
19              ROBERT BARTIK,
20    called as a witness on behalf of the People of
21    the State of Illinois, having been first duly sworn,
22    under oath was examined and testified as follows:
23              DIRECT EXAMINATION
24              BY MS. COLEMAN:
```