# EXHIBIT 56

```
 1   STATE OF ILLINOIS )
                       ) SS
 2   COUNTY OF C O O K )

 3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
     THE PEOPLE OF THE        )
 5   STATE OF ILLINOIS,       )
                              )
 6                  Plaintiff, )
                              )
 7    -vs-                    ) No. 00-CR-20601-01
                              )
 8   XAVIER WALKER,           ) Charge: Murder
                              )
 9                  Defendant. )

10                   REPORT OF PROCEEDINGS of the hearing

11   before the Honorable MARCUS R. SALONE, on the 11th

12   day of January, 2005.

13        APPEARANCES:

14        HON. RICHARD A. DEVINE,
          State's Attorney of Cook County,
15        BY: MS. JENNIFER RAVIN,
          Assistant State's Attorney,
16        on behalf of the People of the
          State of Illinois;
17
          MR. EDWIN A. BURNETTE,
18        Public Defender,
          BY: MR. JOHN CONNIFF,
19        Assistant Public Defender,
          on behalf of Defendant Young;
20
          MR. GREGORY WILSON,
21        Attorney at Law,
          on behalf of Defendant Walker.
22

23   CHRISTINE E. WEBER, CSR No. 084-001403
     Official Court Reporter
24   Criminal Division
     Chicago, Illinois
```

1                        I  N  D  E  X

2

   XAVIER WALKER
3  CASE NO. 00-CR-20601-01
   DATE: 1/11/05
4  PAGES: EEE-1 through EEE-20
   REPORTER:  Christine E. Weber
5

6

7

8  SENTENCING HEARING

9

10

11

12

13                      --oOo--

14

15

16

17

18

19

20

21

22

23

24

```
 1              THE COURT:  Bring out Walker and Long,
 2     please.
 3                   (Pause.)
 4              THE COURT:  Good morning, sir.
 5              DEFENDANT WALKER:  Good morning.
 6                   (Pause.)
 7              THE COURT:  Okay.  If you're all ready to
 8     proceed, let's do so.
 9                   We are -- in aggravation?
10              MS. RAVIN:  Correct, Judge.  We have I
11     believe rest --
12              THE COURT:  Before we proceed any further,
13     counsel, please identify yourselves.
14              MR. CONNIFF:  Judge, John Conniff,
15     C O N N I F F, for Jovanie Long.
16              MR. WILSON:  Gregory Wilson on behalf of
17     Xavier Walker.
18              MS. RAVIN:  Jennifer Ravin for the People.
19              THE COURT:  Thank you.
20                   Now, what were you saying?
21              MS. RAVIN:  Judge, we had presented in
22     aggravation the pending cases of the defendants.  We
23     had not -- and then we had presented the victim
24     impact statement, and that was what we had presented
```

1    in terms of aggravation.  We did not present any

2    certified copies of conviction or anything.  I was

3    waiting for argument, but I can present those.

4              I did not present their criminal

5    history.

6              THE COURT:  All right.  Mitigation, please.

7    You can tender argument.

8              MR. CONNIFF:  Judge, on behalf of Jovanie

9    Long, we would rely on the presentence

10   investigation.

11             I would bring to the Court's attention

12   that the defendant was raised by his uncle, who is

13   present in court, Thomas Clandor (phonetic).  He is

14   in the rear of the courtroom.

15             We would ask your Honor to consider

16   the contents of the presentence investigation and

17   impose a reasonable sentence upon Mr. Long.

18             MR. WILSON:  Similarly, Judge, on behalf of

19   Xavier Walker, we, too, would like the Court to take

20   cognizance of the presentence investigation report

21   that had been rendered and take note of the fact

22   that Mr. Walker is 25 years old, has no criminal

23   history regarding any violent crimes.  The -- in

24   fact, he only has a history of two drug -- two small

1    drug cases as an adult, Judge.

2                 Again, he's 25 years old. He's born

3    and raised and lived all of his life with his

4    family. We'd ask you to take cognizance of the

5    presentence investigation report.

6                 THE COURT: Arguments?

7                 MS. RAVIN: Judge, in terms of Xavier

8    Walker, he has the cases that we've presented in

9    aggravation that were pending. His two prior

10   convictions are a 1998 possession of a controlled

11   substance with intent, which is a Class 2, and a

12   possession of a controlled substance, which is a

13   Class 4. He received IPS probation on both in July

14   of 1998.

15                He then violated that probation and

16   was resentenced to boot camp. He was then violated

17   on that and he received three years IDOC in

18   September of 1999.

19                When he went to Illinois Department of

20   Corrections, he was given work release. He then

21   escaped from that work release. He has continually

22   shown and thumbed his nose at the authority. Hence,

23   the possession of contraband in a penal institution

24   was also presented in aggravation.

1           Furthermore, the statements that were

2    made in the presentence investigation are clearly

3    self-serving.  He makes a comment about that he had

4    used marijuana with his friend approximately every

5    other day and that he had last used marijuana before

6    he was arrested on this case.  He also states that

7    he was under the influence of marijuana at the time

8    of his arrest.

9           He clearly states in the videotaped

10   statement that he wasn't under the influence and

11   that he was sober and adequate to give the

12   statement.  You viewed that videotaped statement,

13   and he clearly was not high or under the influence

14   at that time.

15           In terms of -- do you want me to do

16   both, Judge?

17           THE COURT:  Yes.

18           MS. RAVIN:  In terms of Mr. Jovanie Long,

19   he has a 2000 possession of a controlled substance

20   where he received one year IDOC.  He has a Class 2

21   possession of a controlled substance with intent in

22   1998 where he got 18 months felony probation.

23           He says in his presentence

24   investigation that he left school because he lost

```
 1    interest.  Judge, he lost interest; so he decided

 2    not to make something of his life and instead he

 3    decided to take up with his co-defendant in this

 4    case and sell phony drugs and hit people up and

 5    murder them for money, which is exactly what

 6    happened in this case.

 7              They told you in their videotaped

 8    statements that they were going to pretend to sell

 9    the drugs and then they were going to rob them.

10    Unfortunately, Marek Magik (phonetic), when he was

11    driving, got lost, ended up in this area and, while

12    he thought he would be asking for directions,

13    clearly was not given correct directions.  He was

14    told to drive around the corner, at which point

15    Jovanie Long enters the car and a fight ensues, and

16    he takes that gun and he shoots the victim, Marek

17    Magik.

18              After that, he then chases down the

19    victim, who clearly did not want to give up his life

20    or his money that he had worked so hard for.  It was

21    his first paycheck that he was out celebrating when

22    he had that cash in his shirt pocket.

23              The defendant then chases after

24    Mr. Magik and shoots him from behind, killing him
```

1    and leaving him there to die.  The two defendants

2    take off and are eventually caught.

3                Based on their backgrounds, based on

4    the egregious circumstances in the case, and based

5    on the fact that Jovanie Long was convicted of

6    personally discharging the weapon --

7                THE COURT:  No.

8                Go on.

9                MS. RAVIN:  -- we believe that your Honor

10   will institute a fair and appropriate sentence and

11   that he should be given the extra, as mandated by

12   the statute, of the additional 25 to life on top of

13   the normal range of 20 to 60.

14                We were originally seeking the death

15   penalty which, since he was not found guilty of a

16   triggering offense, he is not eligible for.

17                THE COURT:  John?

18                MR. CONNIFF:  Judge, based upon the

19   defendant's age and the information contained in the

20   presentence investigation, as well as his lack of

21   any history of crimes of violence, we would ask your

22   Honor to impose a reasonable sentence within the

23   range mandated by the statute.

24                THE COURT:  Greg?

1          MR. WILSON:  Judge, I'd just like to point

2     out that, contrary to counsel's statement, the

3     presentence investigation does not contain anything

4     suggesting that my client was in violation of the

5     work release for the simple fact, Judge, that that

6     simply is not true.

7               In fact, as we stand here right now,

8     he's currently in Stateville for that offense, and

9     he has been informed by them, Judge, that their

10    records are in error, that there is no such

11    violation.

12               We ask that given his age, Judge, and

13    given his background, an appropriate sentence be

14    imposed.

15          THE COURT:  Well, Mr. Long, anything you'd

16    care to say?

17          DEFENDANT LONG:  No, sir.

18          THE COURT:  Mr. Walker?

19          DEFENDANT WALKER:  No, sir.

20          THE COURT:  Mr. Long, the evidence quite

21    clearly established that you did in fact discharge a

22    handgun which resulted in the shooting death of the

23    victim.

24               The law requires a minimum sentence of

CCSAO XAVIER WALKER 001495

1    really what is 45 years in the Illinois Department

2    of Corrections as a minimum.  That is all of your

3    productive life and then some.  Sir, you are

4    sentenced to 45 years in the Illinois Department of

5    Corrections.

6                    Mr. Walker, anything you want to say,

7    sir?

8              DEFENDANT WALKER:  No, sir.

9              THE COURT:  How old are you now,

10   Mr. Walker?

11             DEFENDANT WALKER:  Twenty-five, sir.

12             THE COURT:  Twenty-five.

13                  I have reviewed the presentence

14   investigation of not only Mr. Long but Mr. Walker as

15   well, and I agree with counsel for Mr. Walker.

16   Unless I'm overlooking it, I don't see any --

17             MS. RAVIN:  Judge, it's part of the same

18   attachment in the pre-sentence investigation.  It

19   shows that he has a warrant from IDOC.  It was

20   issued, I believe -- if you look on the bottom of

21   one of the pages, it says warrant and then the next

22   page it shows that he was -- show that to counsel.

23                  (Pause.)

24             THE COURT:  Okay.  I will not consider that

1    circumstance in the sentencing.

2                Sir, it is with an eye toward

3    rehabilitation that you be sentenced to the Illinois

4    Department of Corrections for a period of 35 years.

5                Mr. Walker and Mr. Long, you have 30

6    days from today's date to appeal the sentence, and

7    to do that, you must set forth in writing the

8    reasons for your post-trial motions.  Issues not

9    reduced to writing cannot be argued later on.

10               If you need a copy of these

11   proceedings to assist you in the preparation of

12   post-trial motions and you cannot afford that, let

13   me know and I'll give you one free of cost.  If you

14   need counsel to assist you in post-trial motions but

15   cannot afford one, let me know that, and I'll

16   appoint an attorney to represent you.

17               Any questions, Mr. Long?

18          DEFENDANT LONG:  How long will that take?

19          THE COURT:  Your appeal?

20          DEFENDANT LONG:  Yes.

21          THE COURT:  I can't say exactly, sir.

22          DEFENDANT LONG:  I don't think I can afford

23   no -- well, I know I'm not going to be able to

24   afford no lawyer; so whatever.

```
 1              THE COURT:  All right.  I would imagine

 2     that counsel will file a motion to reconsider, and

 3     pending the outcome of that, if it's denied, I'm

 4     sure that Mr. Conniff will file a motion that the

 5     State Appellate Division be appointed to represent

 6     you.

 7              MR. WILSON:  Judge, on behalf of

 8     Mr. Walker, I'm asking that he be given credit for

 9     the 1,688 days that he has been in custody.

10              THE COURT:  It's noted.

11              MR. CONNIFF:  Judge, as to Mr. Long, 1,620

12     days.

13              THE COURT:  I'm sorry.  I've got them -- do

14     you have any statements from the victims?

15              MS. RAVIN:  Unfortunately, there was a

16     disastrous accident last night and she was not able

17     to come in today.  She did, however, want the

18     sentencing to proceed.

19              THE COURT:  Yes, ma'am.  Something you want

20     to say?

21              MRS. WALKER:  Your Honor --

22              MR. WILSON:  This is Mrs. Walker, Judge.

23              THE COURT:  Yes, Miss Walker.

24              MRS. WALKER:  Your Honor, I'm very upset.
```

```
 1                    I know my son is innocent.  They --
 2       and I -- and with no due respect to you, sir.  With
 3       no due respect to you.  I know you base it on the
 4       things that was presented to you, but I feel that my
 5       son wasn't -- it was -- I don't feel the case is
 6       presented in the way that would prove his innocence.
 7                    A lot of times it's -- when we had --
 8       he had witnesses that the State is aware about
 9       during the time that they said was in question, and
10       I know my son was not represented properly.
11                    DEFENDANT WALKER:  Your Honor, I would like
12       to get all the transcripts and everything from the
13       police station up until now of my case.
14                    DEFENDANT LONG:  Me, too, sir.
15                    DEFENDANT WALKER:  Without anything added
16       to the list.
17                    MRS. WALKER:  And, also, sir, no due
18       respect to you, regarding that videotape, he had
19       a -- there was an attorney -- there was an attorney
20       from first events that had came and talked with him,
21       and when this attorney was called on -- when the
22       attorney -- when this attorney had went in and seen
23       and talked with him, this attorney --
24                    THE COURT:  I'm listening.
```

CCSAO XAVIER WALKER 001498

```
 1              MRS. WALKER:  Oh.

 2                   When this attorney was called on, the

 3    way it was presented, it was a -- I think it was an

 4    unfairness because my son wasn't able to -- it

 5    was -- they was saying that he -- he wasn't

 6    comprehending during the time that he was in

 7    questioning.

 8              THE COURT:  Your son didn't understand what

 9    was happening?

10              MRS. WALKER:  During the time that they --

11    he wasn't allowed to call home.  They had questioned

12    him and interrogated him, had him -- it was just to

13    me where he was incoherent and went along with what

14    was being suggested, and to me it was just an

15    unfairness.

16              THE COURT:  Miss Walker, your son's case

17    now is going to have to work its way through the

18    appeal process; and this information that you're

19    sharing now you might want to pass on to the

20    appellate lawyer.  I cannot now retry the case.

21              DEFENDANT WALKER:  Judge, there was one

22    thing.  In this case, there was some pictures that a

23    person from the Public Defender's Office had done

24    took of footprints and bruises on my back and
```

1    handcuff marks on my wrists and when they took me to

2    the police station and what they did to me at the

3    police station, and them pictures was never found.

4    Them pictures never came up, and they didn't get

5    admitted.

6                    My mother and father are trying to

7    find these pictures. They called the police

8    station, they called every place, and they can never

9    find the pictures.

10                   THE COURT: Mr. Walker, it is not my role

11   to act as an active advocate for one side or other.

12   What I hear you asking is that I launch some sort of

13   investigation to determine the whereabouts or the

14   disposition of these photographs. I think it would

15   be inappropriate for me to do that.

16                   If one of the State's witnesses were

17   to say, Judge, we have some proof concerning the

18   guilt of Mr. Walker and would you look into it, I

19   think you would be upset if I said, yes, I'll look

20   into it. And just the same is true for you. I

21   cannot actively go out and search for this bit of

22   evidence or anything else.

23                   You know, it's -- I don't expect you

24   to appreciate what I'm saying, but it is true to the

```
 1    best of my knowledge.

 2                     Yes, ma'am.

 3              MRS. WALKER:  Will I be able to have a

 4    contact visit with my son and touch my son?

 5              THE COURT:  Is there anything else?

 6              MR. CONNIFF:  No, Judge.

 7                     The only other thing is Mr. Long had

 8    asked for a three-week stay of mitt, and if he also

 9    could be allowed to speak to his uncle before --

10              MR. WILSON:  We would be asking for a

11    30-day stay of mitt, Judge.

12              THE COURT:  I'm sorry.  State?

13              MS. RAVIN:  I would -- I was going to ask

14    if we needed to clarify on the counts with respect

15    to Jovanie Long.

16              THE COURT:  As to Mr. Long, the findings

17    are on Counts I, II, IV and V.

18                     As to Mr. Walker, it's Counts I and

19    II.

20              MS. RAVIN:  Okay.

21              THE COURT:  All right.  I can tell you

22    right now that Mr. Walker will probably go back

23    today.

24              DEFENDANT WALKER:  Your Honor --
```

```
 1              THE COURT:  Because he's in custody
 2    already, IDOC custody, but we'll try.
 3              Stay of mitt to February 1st.
 4              DEFENDANT WALKER:  Well, if I'm mandated
 5    back today, I got a copy of the paperwork that they
 6    gave me down there that they found out that it's
 7    over with in two weeks.
 8              THE COURT:  All right.  Well, I'll sign
 9    that.
10              DEFENDANT WALKER:  I'll be mandated back.
11              THE COURT:  Okay.  You got it.
12              Mr. Correctional Officer, on your way
13    to the jury room, would you let him hug his mother?
14              CORRECTIONAL OFFICER:  Okay.
15              THE COURT:  All right.
16              And, uncle, come to the middle of the
17    floor.  Leave your clothing there.
18              All right.  You can go on back,
19    Mr. Walker.
20              MS. RAVIN:  Judge, we do have other matters
21    in aggravation.
22              THE COURT:  Oh, hold on.  Hold on.
23              What sheet?
24              MS. RAVIN:  I don't know the sheets.  I can
```

CCSAO XAVIER WALKER 001502

```
 1    just --
 2              THE COURT:  I can find it for you.
 3              MS. RAVIN:  I have James Littleton.  Just
 4    for the record, James Littleton, 04-CR-5045, will be
 5    nolle'd as they were used in aggravation.
 6              THE COURT:  I'm sorry.  Which one is that?
 7              MS. RAVIN:  04-CR-5045, James Littleton.
 8    He's on here June 4, 2004, from arraignment,
 9    arraignment of Xavier Walker.
10              THE COURT:  Give me the case number.
11              MS. RAVIN:  04-CR-5045.
12              THE COURT:  Five oh four five.
13                   And the name, ma'am, was Littleton?
14              MS. RAVIN:  James Littleton.
15              THE COURT:  All right.  That's nolle'd.
16              MS. RAVIN:  Thank you, Judge.
17              THE COURT:  What's the other one?
18              MS. RAVIN:  Xavier Walker also has
19    04-CR-25239 and 04-CR-10622.  Those would also both
20    be nolle pros'd as they were used in aggravation.
21                   And then I have --
22              THE COURT:  Hold on.  I'm still trying to
23    find it.
24              MS. RAVIN:  10622 and 25239?
```

```
 1              THE COURT:  I've got 10622.

 2              MS. RAVIN:  Okay.

 3              THE COURT:  Then there is one more on --

 4    Mr. Long's?

 5              MS. RAVIN:  Yes.  01-CR-21057, that would

 6    also be a nolle.

 7              THE COURT:  Thank you.

 8                   Defendant demands trial on those

 9    matters?

10              MR. CONNIFF:  Yes, Judge.

11              MS. RAVIN:  Thank you, Judge.

12              THE COURT:  All right.

13

14              WHICH WERE ALL THE PROCEEDINGS HAD

15              AT THE HEARING OF THE ABOVE-ENTITLED

16              CAUSE ON JANUARY 11, 2005.

17

18                      --oOo--

19

20

21

22

23

24
```

1    STATE OF ILLINOIS    )
                          )  SS.
2    COUNTY OF C O O K    )

3
        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
4            COUNTY DEPARTMENT-CRIMINAL DIVISION

5                    I, CHRISTINE E. WEBER, Official Court

6    Reporter of the Circuit Court of Cook County, do

7    hereby certify that I reported in machine shorthand

8    the proceedings had in the hearing of the

9    above-entitled cause; that I thereafter caused to be

10   transcribed into typewriting the above Report of

11   Proceedings which I hereby certify is a true and

12   correct transcript of the proceedings had in the

13   hearing before the Honorable Judge of this Court.

14

15

16                    _Christine E. Weber_

17                    Official Court Reporter of the
                      Circuit Court of Cook County
18

19

20

21

22   Dated this  19th  day of
     _____May_____, 2005.
23

24